IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KYLE MATTHEW DILLON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3109 |
| | § | |
| ISIAKA JIMOH, *ET AL.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se*, filed a section 1983 lawsuit seeking monetary damages against defendant prison officers Isiaka Jimoh and John M. Ndono. Defendants filed a motion for summary judgment premised on failure to exhaust (Docket Entry No. 44), to which plaintiff filed a response (Docket Entry No. 45).

Having considered the motion and exhibits, the response, the pleadings, the record, and the applicable law, the Court GRANTS in part and DENIES in part the motion for summary judgment, as follows.

### *Background and Claims*

Plaintiff claims that, on July 27, 2017, defendants used excessive force against him at the Ferguson Unit in violation of his Eighth Amendment rights. He alleges that defendants assaulted him with a rolling security shield, causing a gash on his hand that required stitches. Defendants disagree with plaintiff's allegations. They state that, while defendant Jimoh was conducting a security check down the prison hall with the rolling

shield, plaintiff stuck his hand out from underneath his cell door and grabbed on to the sharp bottom of the shield. Jimoh, who feared plaintiff was trying to assault him, pulled the shield away from plaintiff, continued his rounds, and did not report the incident. Plaintiff then flooded the hallway, and flagged down the responding officer to report Jimoh had assaulted him. Plaintiff was found to have a laceration on the palm of his hand, which required eight stitches to close. Defendants state that the injury was caused by plaintiff's grabbing the sharp bottom edges of the shield as it rolled past his cell.

Jimoh told prison officials he did not report the incident because he was unaware that pulling the shield away constituted a use of force. A prison investigation was undertaken, and Jimoh's actions were deemed a "non-excessive and necessary use of force." Jimoh was given disciplinary probation for failing to report the provoked use of force. (Docket Entry No. 44, Exhibit B, p. 10.) Contrary to plaintiff's assertions, Jimoh did not receive a disciplinary reprimand for the use of force itself.

Although plaintiff alleges in his complaint that defendant Ndono participated in the incident, no mention of Ndono is made in the investigation or use of force report. Ndono himself stated during discovery in this case that he had been called away to another block and had not been present when the incident occurred. (Docket Entry No. 53, Exhibit A, p. 4.)

Defendants contend that plaintiff failed to exhaust his prison grievances prior to filing this lawsuit, and that the lawsuit should be summarily dismissed for failure to exhaust.

*Analysis*

*Summary Judgment Standards*

The sole issue raised in defendants' motion is whether plaintiff's claim is barred by his failure to exhaust the claim through available prison grievance procedures.

Summary judgment on the issue of exhaustion is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). At this stage, the evidence is viewed in the light most favorable to the nonmoving party, with the issue of exhaustion being a mixed question of law and fact. *Id.* While it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), in a given case and under a given set of circumstances availability may turn on questions of fact. *Id.*

*Exhaustion Standards*

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all available administrative remedies prior to bringing suit in federal court. *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017); 42 U.S.C. § 1997e(a). According to the PLRA,

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA mandates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts*, 877 F.3d at 582. Therefore, "[e]xhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (emphasis omitted). As held by the Supreme Court, "a prisoner must complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The Supreme Court and Fifth Circuit Court of Appeals take a strict approach to the exhaustion requirement, meaning that substantial compliance with grievance procedures does not satisfy the exhaustion requirement. *Butts*, 877 F.3d at 582; *see also Dillon*, 596 F.3d at 268. In order to properly exhaust, a petitioner must have "pursued the grievance remedy to conclusion—substantial compliance with administrative procedures is not enough." *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) (quotation omitted). As a result, "a court may not excuse a failure to exhaust, even to take [any special] circumstances into account." *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016). Proper exhaustion, however, hinges on the availability of administrative remedies. *Id.* at 1858. "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859.

Because failure to exhaust is an affirmative defense, defendants here have the burden of demonstrating that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015). "At the summary-judgment stage, this means that the defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Id.* (quotation omitted).

The Texas Department of Criminal Justice ("TDCJ") has a formal two-step administrative grievance process. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *Id.* If a Step 1 response is unsatisfactory, the inmate then has fifteen days to file a Step 2 grievance to appeal the unfavorable result at the state level. A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement.

Because plaintiff in the instant case names Jimoh and Ndono as defendants, they must show that plaintiff failed to exhaust his administrative remedies as to each of them.

*Defendant Ndono*

The parties agree that the incident made the basis of this lawsuit occurred at the Ferguson Unit on July 27, 2017. Thus, plaintiff's Step 1 grievance against Jimoh and Ndono was due no later than 15 days thereafter. The summary judgment record shows that plaintiff submitted a timely Step 1 grievance on July 28, 2017, complaining of use of excessive force by a single "African officer" the day before. (Docket Entry No. 44,

Exhibit A, pp. 57–58.) Prison officials received the grievance on August 1, 2017, and returned it that same day as "inappropriate" due to plaintiff's request for money damages and disciplinary measures. *Id.* Plaintiff did not pursue a Step 2 grievance.

Thus, the summary judgment evidence establishes that plaintiff filed a Step 1 grievance against an "African Officer," which defendants acknowledge was a reference to Jimoh. No Step 1 grievance was filed as to Ndono. As a result, defendants have met their burden of proof to show that plaintiff did not exhaust his prison grievances as to Ndono, and Ndono is entitled to summary judgment dismissal of plaintiff's claims against him.

*Defendant Jimoh*

The exhaustion issue as to plaintiff's claims against Jimoh, however, requires a different tack. In his response to the motion for summary judgment, plaintiff states under penalty of perjury that he did not receive the original Step 1 grievance back from prison officials. He further states, and the record shows, that after waiting 40 days, he inquired into its status and was informed by prison officials that the grievance had been rejected and returned to him the day it was received.

Plaintiff argues that he was not required to file a Step 2 grievance if he did not receive prison officials' response to his Step 1 grievance. He contends that the response "went astray" because prison officials moved him to a different unit block the same day officials processed the grievance. Defendants' exhibits show that at the time plaintiff submitted the Step 1 grievance, he was housed in P Block, 2 Row, 6 Cell. (Docket Entry

6

No. 44, Exhibit A, p. 57.) He states under penalty of perjury that prison officials moved him to M Block, 2 Row, 3 Cell on August 1, 2017, the day prison officials processed the grievance and date-stamped it as returned to plaintiff. (Docket Entry No. 45, p. 1.) Defendants present no summary judgment evidence showing that the response was returned to plaintiff at his new housing assignment.

The Court agrees with plaintiff that he filed a proper Step 1 grievance for purposes of the PLRA. The Court also agrees with defendants that plaintiff did not file a Step 2 grievance. However, the issue remains whether a Step 2 grievance was an "available remedy" for plaintiff in absence of his receiving a response to his Step 1 grievance.

To determine what remedies are available and thus must be exhausted, courts look to the applicable procedural rules as required by the prison grievance process itself. *Wilson*, 776 F.3d at 299. Therefore, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

The TDCJ Offender Orientation Handbook submitted by defendants in support of their motion for summary judgment informs inmates, in relevant part, as follows:

> You have 15 days from the date of the alleged incident or occurrence of the issue presented in which to complete the Step 1 grievance form and forward it to the unit grievance investigator (UGI). The Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond or 45 days for medical grievances. If you are not satisfied with the Step 1 response, you may appeal the Step 1 decision by filing a Step 2 (I-128). *You have 15 days from the "Date returned to the Offender" noted in the "OFFICE USE ONLY" box on the front of the grievance form to submit the Step 2 to the grievance investigator on the unit.* The Step 2 process may take up to 40 days to provide you a written response or 45 days for medical grievances. Present only one issue per grievance.

7

(Docket Entry No. 44, Exhibit C, p. 87, emphasis added.) Additionally, the TDCJ "Instructions on How to Write and Submit Grievances" notice, attached by prison officials to plaintiff's other Step 1 grievances, specifically states that "*Step 2 appeals must be accompanied by the original, answered Step 1.*" *Id.*, Exhibit A, p. 78 (original emphasis). Defendants neither argue nor show that specific procedures were in place for inmates who do not receive a Step 1 response within 40 days or who receive the response more than 15 days after the response's actual date stamp.[1]

Plaintiff states under penalty of perjury that he did not receive a response to his Step 1 grievance, and defendants present no probative summary judgment evidence to the contrary. Plaintiff's sworn statement, based on his own personal knowledge, and made under penalty of perjury, is competent summary judgment evidence for purposes of the exhaustion issue. *See Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 515 (5th Cir. 2001). Defendants present no summary judgment evidence showing that plaintiff was required to submit a Step 2 grievance in absence of receiving a Step 1 response or if 40 days had passed without his receiving a response. At the time prison officials informed plaintiff that his Step 1 grievance had been rejected, a Step 2 grievance was no longer an available remedy for him under the grievance process presented by defendants.

---

[1] By way of contrast, grievance procedures for state inmates under Louisiana's Administrative Remedy Procedure expressly allow inmates to file a Step 2 grievance if they do not receive a Step 1 response within 40 days. *See Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019).

The Court finds that plaintiff has raised a genuine issue of material fact precluding the granting of summary judgment in favor of defendant Jimoh as to exhaustion, and Jimoh is not entitled to summary judgment.

## *Conclusion*

Defendants' motion for summary judgment (Docket Entry No. 44) is GRANTED as to defendant John M. Ndono and DENIED as to defendant Isiaka Jimoh.

Any further dispositive motions are due within SIXTY DAYS from date of this order.

THIS IS AN INTERLOCUTORY ORDER.

Signed at Houston, Texas on September 11, 2019.

Gray H. Miller
Senior United States District Judge