## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

KYLE MATTHEW DILLON,                  §
                                      §
         *Plaintiff*,                 §
                                      §
v.                                    §          CIVIL ACTION NO. H-17-3109
                                      §
ISIAKA JIMOH,                         §
                                      §
         *Defendant.*                 §

### MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se*, filed this section 1983 lawsuit seeking monetary damages against defendant prison officer Isiaka Jimoh for use of excessive force in violation of the Eighth Amendment.[1]  Defendant Jimoh filed a motion for summary judgment (Docket Entry No. 61), to which plaintiff filed a response (Docket Entry No. 62).

Having considered the motion and exhibits, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons shown below.

### *Background and Claims*

Plaintiff claims that, on July 27, 2017, defendant Jimoh used excessive force against him at the Ferguson Unit in violation of his Eighth Amendment rights.  According to

---

[1]Plaintiff filed several informal "declarations" throughout this lawsuit, presenting various allegations or arguments regarding his claims.  These additional pleadings can be construed as supplemental complaints, for which plaintiff did not request or obtain leave to file. The pleadings (Docket Entries No. 9, 10, 11, and 28) are ORDERED STRICKEN FROM THE RECORD as improper and unauthorized supplemental complaints.

plaintiff, Jimoh assaulted him with a rolling security shield and his feet without provocation or cause when plaintiff posed no threat to him.  (Docket Entry No. 1, p. 4.)

In his response to Jimoh's motion for summary judgment, plaintiff alleges that he saw Jimoh walking down the run with a rolling security shield and tried to stop him by sticking his arm and hand out from under his cell door.  Jimoh did not stop, so plaintiff grabbed on to the rolling shield and prevented it from moving.  He states that Jimoh walked around the shield and kicked and stomped on plaintiff's hand.  Plaintiff continued to hold on to the shield until another, unidentified officer yanked the shield away, cutting plaintiff's hand in the process.

Plaintiff seeks monetary, nominal, and punitive damages against Jimoh for unnecessary and excessive use of force, and asks that criminal charges be brought against him.  Defendant Jimoh argues that plaintiff's actions constituted an assault and security threat and that his use of force in light of plaintiff's actions was objectively reasonable.

### *Summary Judgment Standards*

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

2

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant may not rely upon mere allegations contained in the pleadings and must set forth and support by probative summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be 'no genuine

issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23.

### *Analysis*

*Eleventh Amendment Immunity*

Plaintiff sues defendant Jimoh in his individual and official capacity for monetary damages. To the extent he seeks compensatory damages against Jimoh in his official capacity as an employee or officer of TDCJ, his claims are barred by Eleventh Amendment immunity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (holding that the Eleventh Amendment bars recovery of money damages from TDCJ officers in their official capacity under section 1983).

Plaintiff's claims for compensatory damages against defendant Jimoh in his official capacity are DISMISSED WITH PREJUDICE as barred by Eleventh Amendment immunity.

*Plaintiff's Response Negates His Claim*

Plaintiff seeks Eighth Amendment damages against defendant Jimoh for causing the laceration to his hand. His own summary judgment response, however, negates this claim. In his response to the motion for summary judgment, plaintiff proffers the following version of the incident under penalty of perjury:

> The incident happened while I was taking extraordinary measures trying to get the officers to give me some cold water which policy requires staff pass "as needed." I had already been ignored by these officers numerous times as they passed my cell and the SSI had been ordered not to give me any water so as officer Jimoh came walking down the run towards my cell from the back of the

4

run *I placed my arm out the bottom of the door* attempting to wave the officer
down.  He had the rolling shield with him and did not stop but hit my arm with
it and tried to keep going.  *I closed my hand on the side of the shield* farthest
from the officer.  His response was to start kicking and stomping on my hand
*after he walked around the shield to where my hand was.  The other officer
grabbed the shield and started jerking it violently until he ripped my palm
open*.  Both officers then went down stairs leaving me in my cell bleeding and
did not report the incident.

(Docket Entry No. 62, p. 2, emphasis added.)

Thus, according to his summary judgment response, plaintiff stuck his hand and arm

out the bottom of his cell door to get Jimoh's attention.  Jimoh did not stop, but instead hit

plaintiff's arm with the rolling shield and tried to continue on.  Plaintiff took hold of the

rolling shield and stopped it from moving forward.  In response, Jimoh walked around the

shield to plaintiff's side of the rolling shield (during which time plaintiff continued to hold

and maintain control of the rolling shield) and kicked and stomped on plaintiff's hand.  Even

then, plaintiff did not release control of the security device, as he states another officer

grabbed the shield and violently yanked it until plaintiff's hand was cut and plaintiff released

the shield.

As shown by plaintiff's own allegations, it was not defendant Jimoh who pulled the

shield away from plaintiff.  To the contrary, an unidentified second officer yanked the shield

away from plaintiff and plaintiff's hand was injured when plaintiff refused to let go of the

shield.  Plaintiff grabbed and held on to the rolling shield after, or as, it passed over his arm;

he makes no allegations that Jimoh's actions caused him any physical injury.  Moreover,

plaintiff admits that he took control of the security device and did not let go even after Jimoh

kicked and stomped on his hand.  That plaintiff's only injury was his cut palm is supported by the prison's medical record regarding the incident.  (Docket Entry No. 61-1, p. 41.)

Plaintiff establishes neither physical injury nor use of excessive force attributable to defendant Jimoh.  Jimoh is entitled to summary judgment dismissal of plaintiff's Eighth Amendment claim against him.

*Excessive Force*

In support of his motion for summary judgment, Jimoh submits a copy of the prison's Use of Force Report regarding the incident.  In the Report, Jimoh acknowledges that he was the only officer present during the incident, and that he pulled the rolling shield away when plaintiff continued to hold on to it.  Even though plaintiff's own summary judgment evidence controverts Jimoh's admission, the Court will consider whether Jimoh's actions as set forth in the Report violated plaintiff's Eighth Amendment rights.

When prison officers are accused of using excessive physical force in a manner which violates the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020).  The Supreme Court has recognized several relevant factors in determining whether unnecessary and wanton infliction of pain was used in violation of a prisoner's rights, including: (a) the extent of the injury suffered; (b) the need for the application of force; (c) the relationship between the need and the amount of force used; (d) the threat reasonably perceived by the responsible officials; and (e) any efforts made to

6

temper the severity of a forceful response. *Id.*, at 7. In all respects, the amount of force that is constitutionally permissible must be judged by the context in which that force is deployed, *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996), and the determination is based on the nature of the force more than on the extent of the injury. *Bourne v. Gunnels*, 921 F.3d 484 (5th Cir. 2019).

To raise a factual dispute as to excessive force, a plaintiff must point to evidence showing: (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable. *See Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 398 (1989). The use of force must be evaluated "from the perspective of a reasonable officer . . ., rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 627 (quoting *Graham*, 490 U.S. at 397).

In support of summary judgment, defendant submits the affidavit of Ferguson Unit Assistant Warden James Blake, who testifies as follows:

> My name is James Blake. I am over the age of 18 years, competent to make this affidavit and have personal knowledge of the facts herein stated. I am employed by the Texas Department of Criminal Justice (TDCJ) as Assistant Warden at the Ferguson Unit in Midway, Texas. As part of my responsibilities I serve as the warden responsible for Administrative Segregation at the Ferguson Unit. I have a high level of training, experience, and daily familiarity with Administrative Segregation at the Ferguson Unit, to include its policies, procedures, logistics, personnel, offenders, and facilities. I also have a high level of training, experience, and daily familiarity with uses of

7

force in a correctional context, to include professional assessment of the propriety thereof.

I am making this affidavit in connection with Civil Action No. 4:17-CV-3109; *Kyle Dillon v. Isiaka Jimoh, et al.*; in the United States District Court for the Southern District of Texas, Houston Division.  To prepare this affidavit, I have reviewed Major Use of Force Report No. M-05437-07-17, TDCJ Grievance No. 2017181990, and Plaintiff Kyle Dillon's Original Complaint.

In the past four years I have not testified as an expert at trial or by deposition. Except for my usual salary, I am not receiving any pay for review of records or preparation of this report.  I had no personal involvement in the events giving rise to this lawsuit, nor am I personally familiar with the parties.

I understand that Kyle Dillon, a TDCJ offender, claims that Isiaka Jimoh, a former TDCJ correctional officer, violated Dillon's Eighth Amendment rights while Dillon was incarcerated at the Ferguson Unit.  Specifically, Dillon claims that Jimoh committed an "assault" against Dillon using a "rolling shield and feet" on July 27, 2017.  Dillon claims he presented no threat at the time of the incident.  Dillon claims that he suffered a large "gash" requiring hospital treatment.  According to Dillon's grievance statement, this injury was incurred on his left hand.

According to the relevant Use of Force Report, Kyle Dillon was confined to Ferguson Unit, O Block, 2 Row, 6 Cell on July 27, 2017.  This housing is within an area of the prison known as Administrative Segregation. Offenders housed in Administrative Segregation are confined to solitary cells for approximately 23 hours per day.  Administrative Segregation offenders are not permitted to independently leave or remove anything, to include parts of their body, from their cells at any time.   Any offender removal from an Administrative Segregation cell, whether full or partial, must be preceded at minimum by a full strip search, application of hand restraints, and an escort by correctional officers.

*Any situation in which an Administrative Segregation offender succeeds in removing himself, any part of his body, or an object from his cell without authorization or appropriate predicate safeguards is inherently a threat to the safety and security of the prison.*  Administrative Segregation offenders have been independently adjudicated to be an especially dangerous subset of the greater population of convicted felons housed within TDCJ prison units. Diligent care and caution must be taken at all times to ensure that these

8

offenders are not given the opportunity to harm correctional staff, other offenders, or themselves. Independent and unauthorized removal of an offender, any part of his body, or any object from an Administrative Segregation cell inherently presents such opportunities and must be prevented or eliminated.

Ferguson Unit, O Block, 2 Row features a series of side-by-side Administrative Segregation cells, one of which is 6 Cell. The cells are fronted by a narrow catwalk. Due to the confined dimensions of the catwalk, any persons traversing on 2 Row are forced to pass very close to the cells. Ferguson Unit officials long ago learned that this arrangement presents a particularly dangerous opportunity for attacks launched from cells against passersby. History has taught that offenders being escorted along the rows in Administrative Segregation are especially at risk for attack by enemy offenders inside the cells. Among other approaches, the Ferguson Unit utilizes large, rolling plexiglass shields, installed on overhead tracks, primarily to mitigate the danger of attack against offenders being escorted along the rows. Correctional personnel may push or pull these shields as they walk in order to provide a continuous physical barrier between the cells and those walking along the rows. The shields hang vertically, several inches outside of the cells on O Block. *It is impossible for an offender to come into physical contact with a rolling shield unless he, or some part of his body, is outside of his cell. As previously stated, Administrative Segregation offenders are not permitted to remove any part of their body from the cells without authorization and predicate safeguards.* Regardless of the location, classification, or authorization of a TDCJ offender, *no offender is permitted to grab, push, pull, or otherwise purposely make contact with a rolling shield at any time. Any such unauthorized offender contact would be considered a threat to the safety and security of the prison, as the shield could be used, among other things, as a defensive barrier for launching attacks, or as a weapon itself.*
Based upon the complaint in this lawsuit, the relevant Use of Force Report, and Kyle Dillon's TDCJ grievance, the following facts appear to be undisputed. On July 27, 2017, at just after 11:00pm, Officer Isiaka Jimoh was present on the Ferguson Unit, O Block 2 Row, and was operating a rolling shield. Offender Kyle Dillon, who was confined inside 6 Cell at the time, made contact with the rolling shield, OUTSIDE his cell, with his left hand. Officer Jimoh pulled the shield away from Offender Dillon, injuring Dillon's hand.

Based upon my education, training, and experience as a TDCJ Administrative Segregation Warden, it is my opinion that Officer Jimoh did not exercise

9

excessive or unnecessary force against Offender Dillon. *Offender Dillon could not have made contact with the rolling shield without illegally extending his hand outside his cell while Officer Jimoh was passing by. Once Offender Dillon made contact with the shield in any way, he created a situation that presented a potential danger to the safety and security of the prison in general, and Officer Jimoh in particular.* It should not be overlooked that Offender Dillon also created a danger to himself that was realized. The dangerous situation created by Offender Dillon was necessarily and properly eliminated by what appears to have been the most expeditious and least amount of force necessary – immediately removing the shield from Dillon's grasp. The alternative – leaving the shield within Offender Dillon's control for any amount of time – would at least allow the dangerousness of the situation to perpetuate, if not increase.

It appears from the relevant records that Officer Jimoh was disciplined for not properly following TDCJ procedures in reporting the incident on July 27, 2017. I offer no opinion on Officer Jimoh's performance following the use of force, except that a failure to report a use of force has no bearing on whether the use of force itself was proper. Based upon my education, training, and experience as an Administrative Segregation Warden, and my review of the relevant records, it is my opinion that Officer Jimoh used proper and necessary force against Offender Dillon on July 27, 2017.

(Docket Entry No. 61-3, original and additional emphasis.)

Prison officials investigated the incident and concluded in the Use of Force Report that Jimoh's use of force in the incident had been justified. (Docket Entry No. 61-1, p. 5.) Jimoh was reprimanded for failing to report a "Non-Excessive and Necessary Use of Force." *Id.*, p. 14. The following was reported as to "Fact Finding Inquiry MA-05437-07-17":

On 7/27/17 a major use of force occurred involving Offender Dillon, Kyle #1268995. On 7/27/17 at approx. 2303 hours, Officer Jimoh, Isiaka COIV was conducting cell searches on O block two row. As Officer Jimoh was walking back up two row run, Offender Dillon in O 2-6 cell put his hand underneath the cell door and grabbed a hold of the rolling shield. At that time Officer Jimoh [was] unaware of Offender Dillon's intentions and pulled the shield away from Offender Dillon's grasp. Officer Jimoh continued with his normal duties.

10

*    *    *    *

Lt. LaCombe states when he approached O 2-6 cell, Offender Dillon showed him a laceration to his hand and stated Officer Jimoh hit him with his shield. Lt. LaCombe states he questioned Officer Jimoh and he stated Offender Dillon reached his hand out of his cell and grabbed onto the shield. Officer Jimoh stated to Lt. LaCombe he had to pull the shield away from the offender. Lt. LaCombe questioned Officer Jimoh why a supervisor was not notified and he stated he was not aware it was a use of force.

*    *    *    *

Offender Dillon received a laceration to his left hand that required 8 sutures to treat. The injury to Offender Dillon's hand was consistent with grabbing the rolling shield and it being pulled from his hand. The rolling shield has an aluminum frame that has sharp edges.

*Id*. Defendant Jimoh provided the following statement to the use of force investigators:

Approximately 2303 pm on O block after doing a cell search on 2-23, 24, and 25 cells, I, Officer Jimoh was walking towards 2 row run [illegible] door while Offender Dillon Kyle [number] housed in O 2-6 cell suddenly stretch[ed] his hands out under his cell door and grabbed the shield in an attempt to assault me Officer Jimoh. I felt my life was in danger and all I could do to protect myself was to hold on to the shield and pulled [*sic*] away from his cell and I resumed my normal duties.

*Id*., p. 21. Although plaintiff was provided the opportunity to make a written statement for inclusion in the Use of Force Report, he declined. *Id*., p. 22. Three inmate witnesses were

11

also asked to provide written statements, but refused. *Id.*, p. 38.[2]  In his prison administrative grievance, plaintiff complained that he was assaulted without provocation by an unidentified African officer who assaulted him with the rolling shield and by kicking his left hand. (Docket Entry No. 61-2, p. 2.)  Plaintiff made no mention in his grievance of having stuck his hand out from underneath his door and taking control of the rolling shield or that his hand was cut when he held on to the shield and it was pulled away.

The threat created by plaintiff's actions were reasonably perceived by Jimoh and he used only the amount of force necessary to gain control of the situation.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The probative summary judgment evidence shows that Jimoh's use of force was the direct result of plaintiff's own threatening behavior in taking control of the rolling shield.  The use of force was applied in an effort to restore and maintain discipline and security, and was reasonable under the circumstances.  In short, the use of force was necessary because plaintiff grabbed hold and refused to let go of the security

_____

[2]The Court notes that another inmate directly filed a declaration in this case, unrelated to the summary judgment proceedings.  (Docket Entry No. 52.)  In his letter to plaintiff, the inmate enclosed his affidavit and requested a reciprocal affidavit from plaintiff for the inmate's use in his own lawsuit.  The inmate stated that he "witnessed" the incident from another part of the prison block by using a mirror, even though "the lighting was poor."  The inmate stated that he saw plaintiff stick his arm and hand out from under his door and that either Jimoh or another correctional officer pushed the security shield towards plaintiff's arm.  Plaintiff caught the shield before it could hit his arm.  According to the inmate, one of the two officers then "ran up" to plaintiff's hand and stomped and kicked it, at which point plaintiff pulled his hand and arm back into his cell and the officers moved on.  The inmate made no mention of either officer pulling or yanking the rolling shield away from plaintiff's grasp and cutting his hand.  The inmate's version of the incident contradicts plaintiff's own allegations and does not identify what actions were taken by Jimoh. Even assuming plaintiff had relied on the declaration as summary judgment evidence, the declaration provides no basis for denying Jimoh's motion for summary judgment.

shield.  Even after defendant  Jimoh kicked plaintiff's hand or stomped on it, plaintiff refused to let go.  Indeed, even after Jimoh tried pulling the shield away from plaintiff, plaintiff held on until his hand was injured.

The probative summary judgment evidence submitted by defendant shows that the use of force was in response to plaintiff's threatening actions.   Jimoh was faced with a recalcitrant inmate who resisted Jimoh's attempts to remove the security shield from his grasp.  *See*, *e.g.*, *Williams v. Valenti*, 432 F. App'x 298, 2011 WL 2650883 (5th Cir. 2011) (finding use of force not malicious or sadistic where inmate was belligerent and pulled away when officer grasped his arm).  Plaintiff's actions constituted, and were reasonably seen as, a threat to Jimoh and prison security.  Jimoh attempted to alleviate the threat first by kicking and stomping on plaintiff's hand; when plaintiff failed to let go of the security device, Jimoh pulled the shield away from him.  Because plaintiff refused to let go of the shield, his hand was injured, and only at that point did plaintiff relinquish his hold on the shield.  The threat and security breach ended at that point, and Jimoh continued his duties without further use of force against plaintiff.  The parties do not allege that Jimoh had been aware that plaintiff's hand was injured when he pulled the security device away.

Plaintiff's disagreement with Jimoh's allegations of being assaulted or threatened by plaintiff's actions do not constitute probative summary judgment evidence for purposes of defeating summary judgment.  Nor does plaintiff raise a material issue of fact precluding summary judgment by arguing that, had his actions constituted an assault or threat against Jimoh, disciplinary action would have been taken against him.

13

Plaintiff has not established a genuine issue of material fact as to whether Jimoh's use of force violated his Eighth Amendment rights in context of the situation, and defendant Jimoh is entitled to summary judgment dismissal of the claim.

### *Conclusion*

Defendant Isiaka Jimoh's motion for summary judgment (Docket Entry No. 61) is GRANTED, and this lawsuit is DISMISSED WITH PREJUDICE.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on October 23, 2020.

Gray H. Miller
Senior United States District Judge